IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| DIGIMEDIA TECH, LLC, | |
| Plaintiff, | |
| | **CIVIL ACTION** |
| v. | NO. _____ |
| PANASONIC CORPORATION, | |
| Defendant. | **Jury Trial Demanded** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff DigiMedia Tech, LLC ("Plaintiff") files this Complaint for Patent Infringement against Defendant, and states as follows:

## THE PARTIES

1.     Plaintiff is a limited liability company organized and existing under the laws of the State of Georgia, having its principal office at 44 Milton Ave., Suite 254, Alpharetta, GA 30009.

2.     Defendant Panasonic Corporation ("Panasonic" or "Defendant") is a corporation organized and existing under the laws of Japan, with a place of business at 1006, Oaza Kadoma, Kadoma-shi, Osaka 571-8501, Japan.  Upon information and belief, Panasonic sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and

introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

3.      This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

4.      This Court has general and specific personal jurisdiction over Defendant, consistent with due process, because Defendant has minimum contacts with the State of Georgia pursuant to the Georgia Long Arm Statute and has purposefully availed itself of the privileges of conducting business in the State of Georgia.  For example, on information and belief, Defendant has sold or offered to sell infringing products in the State of Georgia and in this Judicial District, or has manufactured accused products and provided them to intermediaries for distribution throughout the country, including in the State of Georgia and this Judicial District, with knowledge of this distribution.

5.      Venue is proper in this Court as to Defendant pursuant to 28 U.S.C. § 1391(c)(3).  Upn information and belief, Panasonic is not resident in the United States and may be sued in any judicial district.

## FACTUAL BACKGROUND

*The '635 Patent*

6.      Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,914,635, entitled "Microminiature Zoom System for Digital Camera" ("the '635 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the United States Patent and Trademark Office ("USPTO").

7.      A true and correct copy of the '635 patent is attached hereto as Exhibit A.  The '635 patent is incorporated herein by reference.

8.      The application that became the '635 patent was filed on February 8, 2001.

9.      The '635 patent issued on July 5, 2005, after a full and fair examination by the USPTO.

10.     The '635 patent is valid and enforceable and directed to eligible subject matter.

11.     The elements recited in the asserted claims of the '635 patent were not well-understood, routine, or conventional when the application that became the '635 patent was filed.

12.     The claims of the '635 patent are directed to technical solutions to the technical problem of providing zoom, autofocus, and other features to increasingly compact digital cameras.  Other features the claimed invention enables include such things as anti-shake and image stabilization.  The '635 patent discloses and claims technical solutions to providing such features in increasingly compact digital cameras through, for example, a micro-electromechanical system support mechanism with at least two positions of movement.  The claims of the '635 patent thus allow features like zoom, autofocus, anti-shake, and image stabilization to be provided even in increasingly compact digital cameras.  The inventions claimed in the '635 patent therefore provide technical solutions to this technical problem, are not abstract, and claim patentable subject matter.

***The '706 Patent***

13.     Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,545,706, entitled "System, Method and Article of Manufacture for Tracking a Head of a Camera-Generated Image of a Person" ("the

'706 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

14.    A true and correct copy of the '706 patent is attached hereto as Exhibit B.  The '706 patent is incorporated herein by reference.

15.    The application that became the '706 patent was filed on July 30, 1999.

16.    The '706 patent issued on April 8, 2008, after a full and fair examination by the USPTO.

17.    The '706 patent is valid and enforceable and directed to eligible subject matter.

18.    The elements recited in the asserted claims of the '706 patent were not well-understood, routine, or conventional when the application that became the '706 patent was filed.

19.    The claims of the '706 patent are directed to technical solutions to the technical problem of how to identify a head in an image.  One of various reasons this is important is to assist in focusing a digital camera.  Since many camera users are not trained in how to properly focus a camera, and because many photographs are candid shots of moving subjects, the problem calls for technical solutions.  The '706 patent discloses and claims such technical solutions.  For example, the '706

patent recognized that while a number of different techniques could be used to identify a head portion of a subject in an image, no single technique is foolproof. Thus, the '706 patent discloses applying at least two techniques to identify a head portion and basing the detection of heads on the results of the two techniques. This approach overcomes a problem that any particular technique may be fooled by or rendered inapplicable by particular circumstances (e.g., lighting conditions, orientation of the subject to the camera, etc.). The inventions claimed in the '706 patent therefore provide technical solutions to this technical problem, are not abstract, and claim patentable subject matter.

### The '476 Patent

20.    Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 7,715,476, entitled "System, Method and Article of Manufacture for Tracking a Head of a Camera-Generated Image of a Person" ("the '476 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

21.    A true and correct copy of the '476 patent is attached hereto as Exhibit C. The '476 patent is incorporated herein by reference.

22.    The application that became the '476 patent was filed on April 21, 2005.

23.     The '476 patent claims priority to the application that became the '706 patent, filed on July 30, 1999.

24.     The '476 patent issued on May 11, 2010, after a full and fair examination by the USPTO.

25.     The '476 patent is valid and enforceable and directed to eligible subject matter.

26.     The elements recited in the asserted claims of the '476 patent were not well-understood, routine, or conventional when the application that became the '476 patent was filed.

27.     The claims of the '476 patent are directed to technical solutions to the technical problem of how to identify a head in an image.  One of various reasons this is important is to assist in focusing a digital camera.  Since many camera users are not trained in how to properly focus a camera, and because many photographs are candid shots of moving subjects, the problem calls for technical solutions.  The '476 patent discloses and claims such technical solutions.  For example, the '476 patent recognized that while a number of different techniques could be used to identify a head portion of a subject in an image, no single technique is foolproof. Thus, the '476 patent discloses applying at least two techniques to identify a head portion and basing the detection of heads on the results of the two techniques.  This

approach overcomes a problem that any particular technique may be fooled by or rendered inapplicable by particular circumstances (e.g., lighting conditions, orientation of the subject to the camera, etc.).  The inventions claimed in the '476 patent therefore provide technical solutions to this technical problem, are not abstract, and claim patentable subject matter.

***The '532 Patent***

28.     Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,473,532, entitled "Method and Apparatus for Visual Lossless Image Syntactic Encoding" ("the '532 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

29.     A true and correct copy of the '532 patent is attached hereto as Exhibit D.  The '532 patent is incorporated herein by reference.

30.     The application that became the '532 patent was filed on March 14, 2000.

31.     The '532 patent issued on October 29, 2002, after a full and fair examination by the USPTO.

32.     The '532 patent is valid and enforceable and directed to eligible subject matter.

33.     The elements recited in the asserted claims of the '532 patent were not well-understood, routine, or conventional when the application that became the '532 patent was filed.

34.     The claims of the '532 patent are directed to technical solutions to the technical problem of providing a visually lossless video compression method and apparatus.  One of the reasons this is important is for storing video in a compressed format, where the compression does not reduce the quality of the video in a visually detectable manner.  Since camera users prefer the competing features of both high quality video and small or practical video file sizes, the problem calls for technical solutions.  The '532 patent discloses and claims such technical solutions. For example, the '532 patent recognized that video encoding can compress the source video input in a manner that is visually lossless.  The '532 patent discloses a number of techniques which include defining visual perception thresholds and classifying picture elements into subclasses using the visual perception thresholds. The picture elements can be transformed according to the subclass.  Consequently, the technology in the '532 patent enables both visually lossless encoding and efficient compression of recorded video.

***The '086 Patent***

35.     Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,567,086 entitled "Immersive Video System Using Multiple Video Streams" ("the '086 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

36.     A true and correct copy of the ' 086 patent is attached hereto as Exhibit E.  The '086 patent is incorporated herein by reference.

37.     The application that became the ' 086 patent was filed on July 25, 2000.

38.     The ' 086 patent issued on August 12, 2003, after a full and fair examination by the USPTO.

39.     The ' 086 patent is valid and enforceable and directed to eligible subject matter.

40.     The elements recited in the asserted claims of the ' 086 patent were not well-understood, routine, or conventional when the application that became the '086 patent was filed.

41.     The claims of the ' 086 patent are directed to technical solutions to the technical problem of environment mapping systems by providing an immersive

video system which untilizes multiple video streams to display high resolution

immersive videos using conventional video equipment.  One of the reasons this is

important is that users of camera systems may prefer to view video images from a

camera system at different angles, including potentially any angle within a full 360

degrees field of view.  The video recording system may not "know" or be set to a

preferred angle for the users when the video is recorded.  The efficient operation of

(i) recording multiple different video streams and (ii) supporting any potential

angle for view calls for technical solutions.    The '086 patent discloses and claims

such technical solutions.  For example, an immersive video system can record a

plurality of video streams with associated environment data, and a user can select a

preferred video stream.  First environment data, such as camera settings, can be

shared between the plurality of video streams to reduce data processing and data

storage requirements.  Second environment data, such as audio, can be for each

video stream.  Consequently, the technology in the '086 patent enables both

efficient operation while also supporting preferred user features, such as selecting

of a view angle within the 360 field of view.

***The '287 Patent***

42.    Plaintiff is the owner by assignment of all right, title, and interest in

and to United States Patent No. 6,606,287 entitled "Method and Apparatus for

Compression Rate Selection" ("the '287 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

43.    A true and correct copy of the '287 patent is attached hereto as Exhibit F.  The '287 patent is incorporated herein by reference.

44.    The application that became the '287 patent was filed on November 29, 2000.

45.    The '287 patent issued on August 12, 2003, after a full and fair examination by the USPTO.

46.    The '287 patent is valid and enforceable and directed to eligible subject matter.

47.    The elements recited in the asserted claims of the '287 patent were not well-understood, routine, or conventional when the application that became the '287 patent was filed.

48.    The claims of the '287 patent are directed to technical solutions to the technical problem of video compression rate selection, for example, in the field of home electronic entertainment with multiple types of media devices.  One of the reasons this is important the rate selection for video compression should reduce the stored file size or bandwidth requirements while maintaining high quality for the

video.  The media devices can operate in a networked manner and share the video over the network.  The proper selection and use of video compression, while maintaining sufficient quality for sharing video over the network, calls for technical solutions.  The '287 patent discloses and claims such technical solutions. For example, the '287  recognized that multiple data items can be associated with the video input, and a maximum compression rate can be determined from the data items.  The video can be compressed at the maximum compression rate and stored. The media device can operate as client in a client/server architecture. Consequently, the technology in the '287 patent enables networked media devices to compress video at sufficient quality for sharing with other devices.

*The '250 Patent*

49.    Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,741,250 entitled "Method and System for Generation of Multiple Viewpoints into a Scene Viewed by Motionless Cameras and for Presentation of a View Path" ("the '250 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

50.    A true and correct copy of the ' 250 patent is attached hereto as Exhibit G.  The '250 patent is incorporated herein by reference.

51.    The application that became the ' 250 patent was filed on October 17,

2001.

52.    The '250 patent issued on May 25, 2004, after a full and fair

examination by the USPTO.

53.    The '250 patent is valid and enforceable and directed to eligible

subject matter.

54.    The elements recited in the asserted claims of the '250 patent were not

well-understood, routine, or conventional when the application that became the

'250 patent was filed.

55.    The claims of the '250 patent are directed to technical solutions to the

technical problem of using a single camera to provide a view path through one or

more video segments to determine which video frames in the video segments are

used to generate a view.  One of the reasons this is important is that users of a

camera with a wide field of view may prefer to select and view only portions of the

supported wide field of view.  The camera's field of view may be sufficiently wide

to create distorted images on a rectangular screen.  Users may prefer portions with

reduced distortion, which calls for technical solutions.    The '250 patent discloses

and claims such technical solutions.    The camera can record a video stream over

the wide field of view.  The user can designate a portion of the video stream to be a

video segment and subsequently designate a view path through the video segment. Consequently, the technology in the '250 patent enables the view of portions of the camera's wide field of view with reduced distortion.

***The '818 Patent***

56.    Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,744,818 entitled "Method and Apparatus for Visual Perception Encoding"  ("the '818 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

57.    A true and correct copy of the '818 patent is attached hereto as Exhibit H.  The '818 patent is incorporated herein by reference.

58.    The application that became the '818 patent was filed on December 27, 2000.

59.    The '818 patent issued on June 1, 2004, after a full and fair examination by the USPTO.

60.    The '818 patent is valid and enforceable and directed to eligible subject matter.

61.    The elements recited in the asserted claims of the '818 patent were not well-understood, routine, or conventional when the application that became the '818 patent was filed.

62.    The claims of the '818 patent are directed to technical solutions to the technical problem of reducing perceptual redundancy independent of other video compression techniques.  One of the reasons this is important is for storing video in a compressed format, where the compression should also support subsequent viewing of the video at high quality.  Since camera users prefer the competing features of both high quality video and small or practical video file sizes, the problem calls for technical solutions.  The '818 patent discloses and claims such technical solutions.  For example, the '818 patent recognized that video encoding can compress the source video input with a visual perception estimator and a perception threshold.  The '818 patent discloses a number of techniques which include (i) a compression dependent threshold estimator using the perception threshold and (ii) a filter for pixels using the compression dependent threshold. Consequently, the technology in the '818 patent enables smaller video file sizes for a specified level of video quality.

## COUNT I – INFRINGEMENT OF THE '635 PATENT

63.     Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

64.     Defendant has been and is now making, using, selling, offering for sale, and/or importing products that incorporate one or more of the inventions claimed in the '635 patent.

65.     For example, Defendant infringes at least claim 1 of the '635 patent, either literally or under the doctrine of equivalents, in connection with Defendant's Panasonic LUMIX G9 products as detailed in the preliminary claim charts attached hereto as Exhibit I and incorporated herein by reference.

66.     Defendant's infringing activities are and have been without authority or license under the '635 patent.

67.     Plaintiff has been, and continues to be, damaged by Defendant's infringement of the '635 patent, and Plaintiff is entitled to recover damages for Defendant's infringement, which damages cannot be less than a reasonable royalty.

68.     Prior to filing this action, Plaintiff specifically notified Defendant in writing of their infringement of the '635 patent.

69.     Defendant has continued to infringe the '635 patent despite receiving this notice and having actual knowledge of the '635 patent at least since receiving such notice, and Defendant's infringement has therefore been willful.

70.     Based at least on Defendant's willful infringement, this case should be declared exceptional, and Plaintiff should be awarded its costs, attorney's fees, and both pre- and post-judgment interest.

## COUNT II – INFRINGEMENT OF THE '706 PATENT

71.     Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

72.     Defendant has been and is now making, using, selling, offering for sale, and/or importing products that incorporate one or more of the inventions claimed in the '706 patent.

73.     For example, Defendant infringes at least claim 19 of the '706 patent, either literally or under the doctrine of equivalents, in connection with Defendants Panasonic DC-G9 products, as detailed in the preliminary claim charts attached hereto as Exhibit J incorporated herein by reference.

74.     Defendant's infringing activities are and have been without authority or license under the '706 patent.

75.    Plaintiff has been, and continues to be, damaged by Defendant's infringement of the '706 patent, and Plaintiff is entitled to recover damages for Defendant's infringement, which damages cannot be less than a reasonable royalty.

76.    Prior to filing this action, Plaintiff specifically notified Defendant in writing of their infringement of the '706 patent.

77.    Defendant has continued to infringe the '706 patent despite receiving this notice and having actual knowledge of the '706 patent at least since receiving such notice, and Defendant's infringement has therefore been willful.

78.    Based at least on Defendant's willful infringement, this case should be declared exceptional, and Plaintiff should be awarded its costs, attorney's fees, and both pre- and post-judgment interest.

## COUNT III – INFRINGEMENT OF THE '476 PATENT

79.    Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

80.    Defendant has been and is now making, using, selling, offering for sale, and/or importing products that incorporate one or more of the inventions claimed in the '476 patent.

81.    For example, Defendant infringes at least claim 13 of the '476 patent, either literally or under the doctrine of equivalents, in connection with Defendant's

Panasonic DC-G9 products, as detailed in the preliminary claim charts attached hereto as Exhibit K and incorporated herein by reference.

82.    Defendant's infringing activities are and have been without authority or license under the '476 patent.

83.    Plaintiff has been, and continues to be, damaged by Defendant's infringement of the '476 patent, and Plaintiff is entitled to recover damages for Defendant's infringement, which damages cannot be less than a reasonable royalty.

84.    Prior to filing this action, Plaintiff specifically notified Defendant in writing of their infringement of the '476 patent.

85.    Defendant has continued to infringe the '476 patent despite receiving this notice and having actual knowledge of the '476 patent at least since receiving such notice, and Defendant's infringement has therefore been willful.

86.    Based at least on Defendant's willful infringement, this case should be declared exceptional, and Plaintiff should be awarded its costs, attorney's fees, and both pre- and post-judgment interest.

## COUNT IV – INFRINGEMENT OF THE '532 PATENT

87.    Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

88.     Defendant has been and is now making, using, selling, offering for sale, and/or importing products that incorporate one or more of the inventions claimed in the '532 patent.

89.     For example, Defendant infringes at least claim 6 of the '532 patent, either literally or under the doctrine of equivalents, in connection with Defendant's Panasonic GH3 Video Recording products, as detailed in the preliminary claim charts attached hereto as Exhibit L and incorporated herein by reference.

90.     Defendant's infringing activities are and have been without authority or license under the '532 patent.

91.     Plaintiff has been, and continues to be, damaged by Defendant's infringement of the '532  patent, and Plaintiff is entitled to recover damages for Defendant's infringement, which damages cannot be less than a reasonable royalty.

## COUNT V – INFRINGEMENT OF THE '086 PATENT

92.     Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

93.     Defendant has been and is now making, using, selling, offering for sale, and/or importing products that incorporate one or more of the inventions claimed in the '086 patent.

94.    For example, Defendant infringes at least claim 1 of the '086 patent, either literally or under the doctrine of equivalents, in connection with Defendant's Ultra 360° Camera products, as detailed in the preliminary claim charts attached hereto as Exhibit M and incorporated herein by reference.

95.    Defendant's infringing activities are and have been without authority or license under the '086 patent.

96.    Plaintiff has been, and continues to be, damaged by Defendant's infringement of the '086 patent, and Plaintiff is entitled to recover damages for Defendant's infringement, which damages cannot be less than a reasonable royalty.

## COUNT VI – INFRINGEMENT OF THE '287 PATENT

97.    Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

98.    Defendant has been and is now making, using, selling, offering for sale, and/or importing products that incorporate one or more of the inventions claimed in the '287 patent.

99.    For example, Defendant infringes at least claim 1 of the '287 patent, either literally or under the doctrine of equivalents, in connection with Defendant's Panasonic Video Cameras with Wireless/LAN Networking products (including

Model AG-CX350), as detailed in the preliminary claim charts attached hereto as Exhibit N and incorporated herein by reference.

100.   Defendant's infringing activities are and have been without authority or license under the '287 patent.

101.   Plaintiff has been, and continues to be, damaged by Defendant's infringement of the '287 patent, and Plaintiff is entitled to recover damages for Defendant's infringement, which damages cannot be less than a reasonable royalty.

## COUNT VII – INFRINGEMENT OF THE '250 PATENT

102.    Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

103.   Defendant has been and is now making, using, selling, offering for sale, and/or importing products that incorporate one or more of the inventions claimed in the '250 patent.

104.   For example, Defendant infringes at least claim 1of the '250 patent, either literally or under the doctrine of equivalents, in connection with Defendant's Ultra 360° Camera products, as detailed in the preliminary claim charts attached hereto as Exhibit O and incorporated herein by reference.

105.   Defendant's infringing activities are and have been without authority or license under the '250 patent.

106.   Plaintiff has been, and continues to be, damaged by Defendant's infringement of the '250 patent, and Plaintiff is entitled to recover damages for Defendant's infringement, which damages cannot be less than a reasonable royalty.

## COUNT VIII – INFRINGEMENT OF THE '818 PATENT

107.   Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

108.   Defendant has been and is now making, using, selling, offering for sale, and/or importing products that incorporate one or more of the inventions claimed in the '818 patent.

109.   For example, Defendant infringes at least claim 1 of the '818 patent, either literally or under the doctrine of equivalents, in connection with Defendant's Panasonic Cameras with H.264/AVC products (including model AG-CX10 4K Compact Handheld Camcorder), as detailed in the preliminary claim charts attached hereto as Exhibit P and incorporated herein by reference.

110.   Defendant's infringing activities are and have been without authority or license under the '818 patent.

111.   Plaintiff has been, and continues to be, damaged by Defendant's infringement of the '818 patent, and Plaintiff is entitled to recover damages for Defendant's infringement, which damages cannot be less than a reasonable royalty.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court find in its favor and against

Defendant, and that the Court grant Plaintiff the following relief:

A.   Entry of judgment that Defendant has infringed one or more claims of the '635 patent, and that this infringement has been willful,

B.   Entry of judgment that Defendant has infringed one or more claims of the '706 patent, and that this infringement has been willful,

C.   Entry of judgment that Defendant has infringed one or more claims of the '476 patent, and that this infringement has been willful,

D.   Entry of judgment that Defendant has infringed one or more claims of the '532 patent, and that this infringement has been willful,

E.   Entry of judgment that Defendant has infringed one or more claims of the '086 patent, and that this infringement has been willful,

F.   Entry of judgment that Defendant has infringed one or more claims of the '287 patent, and that this infringement has been willful,

G.   Entry of judgment that Defendant has infringed one or more claims of the '250 patent, and that this infringement has been willful,

H.    Entry of judgment that Defendant has infringed one or more claims of

       the '818 patent, and that this infringement has been willful,

I.     Damages in an amount to be determined at trial for Defendant's

       infringement, which amount cannot be less than a reasonable royalty,

J.     Entry of judgment that this case is exceptional, and that Plaintiff be

       awarded all of its costs, expenses, and attorney's fees incurred in

       connection with this action,

K.    Pre-judgment and post-judgment interest on the damages assessed,

       and

L.     Such other and further relief, both at law and in equity, to which

       Plaintiff may be entitled and which the Court deems just and proper.

This 9th day of December, 2020.

                                              /s/Daniel A. Kent
                                              Daniel A. Kent
                                               dankent@kentrisley.com
                                               Tel:  (404) 585-4214
                                               Fax:  (404) 829-2412
                                              Stephen R. Risley
                                               steverisley@kentrisley.com
                                               Tel:  (404) 585-2101
                                               Fax:  (404) 389-9402
                                              Cortney S. Alexander
                                               cortneyalexander@kentrisley.com
                                               Tel:  (404) 855-3867
                                               Fax:  (770) 462-3299

KENT & RISLEY LLC
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022

Attorneys for Plaintiff